[Cite as *State v. DeJarnette*, 2011-Ohio-3691.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95989**

## STATE OF OHIO

PLAINTIFF-APPELLANT

vs.

## YUSEF DEJARNETTE

DEFENDANT-APPELLEE

**JUDGMENT:
AFFIRMED**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-428306

**BEFORE:**   Stewart, P.J., Celebrezze, J., and Rocco, J.

**RELEASED AND JOURNALIZED:**   July 28, 2011

**ATTORNEYS FOR APPELLANT**

William D. Mason
Cuyahoga County Prosecutor

BY:   Matthew E. Meyer
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 8th Floor
Cleveland, OH    44113


**ATTORNEYS FOR APPELLEE**

Robert L. Tobik
Cuyahoga County Public Defender

BY:   Erika B. Cunliffe
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, OH    44113

MELODY J. STEWART, P.J.:

{¶ 1}   The state of Ohio appeals from a court order granting conditional release and Level 5 movement in a group home to defendant, Yusef Dejarnette, who, since 2002 has been under civil commitment after being found not guilty of attempted murder and felonious assault by reason of insanity.   The state's sole objection to the court's order is premised on the whereabouts of the gun used by Dejarnette when he committed the acts that led to his commitment — the state argues that Dejarnette's failure to reveal where he

hid the gun makes him a continuing risk to retrieve the gun and use it while on conditional release.

## I

{¶ 2} The facts are uncontested. Dejarnette suffers from schizophrenia. After finding Dejarnette not guilty of attempted murder and felonious assault by reason of insanity, the court determined that the least restrictive treatment alternative, consistent with the public safety, was a psychiatric hospital in Columbus where Dejarnette was subject to strict observation. Dejarnette continues to be mentally ill and subject to hospitalization by court order, but over the years the conditions of his commitment have eased. By February 2008, Dejarnette had been committed to the Northcoast Behavioral Healthcare System, Cleveland Hospital, where he was approved for Level 5 movement — unsupervised time off hospital grounds, including overnight and weekend passes to a group home. In June 2010, Northcoast asked the court to approve Dejarnette for a 90-day stay at a group home. This request did not seek that Dejarnette be placed on conditional release. The court conducted a hearing on the motion and then granted it, finding that the state failed to prove by clear and convincing evidence that Dejarnette's requested convalescent leave represents a threat to the public safety.

## II

{¶ 3} R.C. 2945.401(G)(2) places the burden on the state to prove by clear and convincing evidence that Dejarnette's current placement poses a threat to the public safety or a threat to the safety of any person. "Clear and convincing evidence" is more

than a mere preponderance of the evidence; it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 368, 481 N.E.2d 613.

{¶ 4} Three different psychiatric experts collectively testified that Dejarnette's schizophrenia is, and has been, in full remission since at least 2005. The court found that the evidence "supports a conclusion that the defendant has insight into his mental illness and will continue prescribed treatment and obtain professional assistance as needed while on convalescent leave." The court further found that Dejarnette had been fully compliant with anti-psychotic medicines for the last four years and that he would remain on those medicines under the proposed release. Other evidence showed that Dejarnette had not engaged in any violent behavior at any time during his commitment. The acts that led to his commitment were the only substantiated acts of violence committed by him, and those acts were committed while he was unmedicated.

{¶ 5} The court rejected the state's concerns that Dejarnette might engage in substance abuse, noting that it was imposing "additional precautions" in the form of electronic monitoring for alcohol detection. The court moreover required Dejarnette to obtain and carry a cell phone with a global positioning system so that his movement could be continually monitored. Finally, the court authorized any law enforcement agency to immediately arrest Dejarnette, with or without a capias, should his location be unknown to the staff at the group home.

III

**{¶ 6}** The state takes no issue with any of the court's factual findings, but argues that the court failed to consider that Dejarnette's freedom of movement could allow him to recover the gun he used when committing the acts that led to his commitment. The state notes that Dejarnette hid the gun after his offense, has not revealed its whereabouts, and the police have not been able to find it, so Dejarnette is a risk to seek out the weapon and use it, thus posing a threat to the public safety while on conditional release.

**{¶ 7}** It is true that, in April 2009, the court issued an order denying an application for conditional leave noting that "defendant has never revealed the ultimate disposition" of the handgun and that "[p]ossible access to the weapon while on conditional release also raised the court's level of concern for future violence." However, the court's reticence in granting conditional release in April 2009 arguably caused it to mention any factors that might potentially support its decision, thus explaining its statements concerning the gun even though there appeared to be no direct evidence to suggest that Dejarnette was a threat to use it.

**{¶ 8}** By October 2010, none of the experts offering opinions on Dejarnette's current mental status believed him to be a threat to the public safety given his five years in complete remission. In fact, the existence of the gun was apparently such a non-issue for the experts that none of them mentioned the gun in their reports to the court. The state mentioned the gun only once during the hearing, when cross-examining an expert. It asked if the expert was "aware that the firearm in this incident has never been recovered?" The expert replied affirmatively. The state neither asked any more

questions on the subject nor did it make any further mention of the gun in argument to the court.

{¶ 9} The lack of evidence to suggest that Dejarnette was at risk to retrieve and use the gun could only be viewed as a positive indication that no such threat existed. Certainly, the failure to locate the gun does not dictate the conclusion that Dejarnette would find and use the gun if conditionally released — all of the experts viewed Dejarnette as a low risk to the community, and the one expert who testified did not appear to change his opinion when the state mentioned the missing gun. And even if the state's concerns were valid, it fails to explain why Dejarnette would be so drawn to this particular gun and not to any other weapon.

{¶ 10} Even without mentioning the missing gun, it is plain that the court took Dejarnette's release seriously, particularly with regard to the possibility that he might pose a threat to public safety despite his having been in remission for five years. But given the rather strict conditions of Dejarnette's release, we cannot conclude that amorphous concerns about his ability to find and use a gun that he supposedly disposed of some ten years ago were compelling enough to show that the court abused its discretion by ordering Dejarnette's conditional release into a group treatment facility.

Judgment affirmed.

It is ordered that appellee recover of appellant his costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
KENNETH A. ROCCO, J., CONCUR